

**SIGNED this 20th day of January, 2012**

_____
John C. Cook
UNITED STATES BANKRUPTCY JUDGE

_____

# IN THE UNITED STATES BANKRUPTCY COURT FOR
# THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Betty Clydene Ashlock | ) | No. 11-15352 |
| | ) | Chapter 13 |
| **Debtor** | ) | |
| | ) | |
| Betty Clydene Ashlock | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | Adv. No. 11-1162 |
| | ) | |
| Wells Fargo Home Mortgage, Inc. | ) | |
| Federal Home Loan Mortgage Corp. | ) | |
| | ) | |
| **Defendants** | ) | |

## M E M O R A N D U M

The above-styled chapter 13 case is before the court on the Motion to Re-Consider or, in the alternative, for Permission to Appeal filed by the debtor, which seeks to alter or amend an order of the court granting Wells Fargo Bank, N.A., relief from the automatic stay and the co-

debtor stay to enforce its rights against the real property located at 4530 McDonald Road, Apison, Hamilton County, Tennessee. The above-styled adversary proceeding is before the court on the Motion to Dismiss and Memorandum in Support filed by Wells Fargo Bank, N.A., f/k/a Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), and Federal Home Loan Mortgage Corp. ("FHLMC"). For the reasons set forth below, the court will deny the debtor's motion and grant the defendants' motion in part.

## I.

The facts pertinent to the motions before the court are undisputed. In August 2003, the debtor and her now-deceased spouse executed a promissory note in favor of Wells Fargo, and repayment of the note was secured by a deed of trust to the property described above. The debtor defaulted on the loan, and Wells Fargo foreclosed on the collateral in February 2009. Wells Fargo was the successful bidder, and thereafter assigned its rights to the property to FHLMC. On May 11, 2009, FHLMC was awarded possession of the property by a detainer warrant issued by the General Sessions Court of Hamilton County, Tennessee. On June 9, 2009, the debtor applied to FHLMC for a loan modification and, two days later, filed a *pro se* "Writ of Certiorari," seeking to stay the enforcement of the detainer warrant for 120 days to allow the debtor to pursue her application for a loan modification. The General Sessions Court apparently treated the filing as an appeal, granted the stay, and ordered the case transferred to the Circuit Court of Hamilton County, Tennessee. The Circuit Court granted summary judgment to FHLMC on January 4, 2010, based on the untimeliness of the appeal. The debtor filed a motion to reconsider that order, but did not appear at the hearing on her motion and the motion was stricken. The debtor did not appeal.

Rather, on February 3, 2010, the debtor filed a *pro se* Complaint and an Amendment to the Complaint against the defendants in the Chancery Court of Hamilton County, Tennessee. The complaint asserted that, in foreclosing on the property and obtaining and enforcing the detainer warrant, the defendants had not complied with Tennessee foreclosure laws, had violated Tennessee consumer protection laws, and was guilty of negligence, fraud, and breach of contract. The complaint alleged that the foreclosure and eviction action was wrongful because the defendants had agreed not to go forward with the process due to ongoing workout negotiations. On September 8, 2010, the Chancery Court dismissed the case with prejudice because the debtor failed to comply with an order compelling discovery. The debtor then obtained legal counsel and filed a motion to alter or amend, which the Chancellor denied on February 1, 2011, explaining:

> There are a number of legal effects that result from the above litigation. Ms. Ashlock cannot bring her suit in Chancery Court for a number of reasons.
>
> First, Ms. Ashlock is prohibited from litigating in Chancery Court the issues she should have litigated in General Sessions Court under the doctrines of *res judicata* and/or collateral estoppel. She should have defended the detainer warrant with any legal reasons she had for opposing the foreclosure and resisting her being evicted from her real estate known as 4530 McDonald Road, Ooltewah, Tennessee. . . .
>
> . . . .
>
> Second, she is prohibited from doing so by the doctrine of prior suit pending. In *West v. Vought Aircraft Industries, Inc.*, 256 S.W.3d 618 (Tenn. 2008), the Supreme Court stated that: "[t]he doctrine of prior suit pending, which dictates that a case is subject to dismissal if there is a prior lawsuit pending involving the same parties and the same subject matter." *Id.* at *620*.
>
> Third, Chancery Court is not an appellate court where persons unhappy with actions of the General Sessions Court or Circuit Court can file a lawsuit to correct any errors. Chancery Court is not a "do over" court.
>
> Fourth, the court is not convinced that the Plaintiff lacked knowledge of the outstanding discovery requests. . . .

>       Fifth, Ms. Ashlock asks for equity without doing equity. She has not been
> making the mortgage payments. She has not sought to escrow the payments with
> the clerk to show her good faith. The house is being occupied, rent-free, by a person or persons without the permission of the true owner for <u>almost</u> two years after
> the foreclosure.

*Ashlock v. Wells Fargo Bank, N.A.*, No. 10-0089, slip op. at 5-7 (Chancery Ct. Hamilton County Tenn. Feb. 1, 2011) (additional citations omitted). The debtor did not appeal that order.

Instead, on September 27, 2011, she filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. Her schedules of assets did not disclose any interest in the McDonald Road property and did not disclose any causes of action against the defendants. On November 15, 2011, Wells Fargo filed a motion for relief from the automatic stay. On November 25, 2011, the debtor filed the complaint initiating this adversary proceeding.

The complaint is in two counts. Count One is entitled "Promissory Estoppel" and asks that the defendants "be estopped from pursuing any further collection or enforcement actions against Plaintiff (including but not limited to, eviction from her home) and should be forced to allow her to repay the mortgage under the modified terms for which she qualifies." The debtor asserts that she is entitled to such relief because (i) the defendants promised that the debtor would not be evicted if she qualified for a loan modification, (ii) she does qualify for a loan modification, and (iii) the debtor relied on the defendants' promise to her detriment by "accumulating the funds to pay on the modified loan and not making any other arrangements to protect her interest in her home." The debtor attaches to her complaint a copy of a letter from FHLMC's attorney to Donald Ashlock, the debtor's deceased husband, promising not to proceed with the eviction "until such time as it is determined whether a loan modification agreement will be possible. If for some reason, you do not qualify for the loan modification, the eviction will proceed

at that time." Count Two is entitled "Negligent Implementation of HAMP," and asserts that the defendants improperly applied guidelines promulgated under the Home Affordable Modification Program. Count Two does not seek to enjoin the eviction or to invalidate the foreclosure, but merely seeks an award of damages.

On December 8, 2011, the court granted the motion for stay relief. On December 15, 2011, the court confirmed the debtor's chapter 13 plan, which does not include any treatment for any secured debts or provide for the distribution to creditors of any proceeds of litigation against the defendants. The plan simply provides for the payment of unsecured debts, after the payment of administrative expenses, from her $200-per-month payments to the trustee's office. On December 16, 2011, the debtor filed the motion to reconsider the December 8 order. On December 29, 2011, the defendants filed their motion to dismiss the adversary proceeding.

## II.

The debtor's motion seeks relief from the order granting relief from the automatic stay based on the debtor's possessory interest in the McDonald Road property. She acknowledges that she does not have any legal interest in the property after the foreclosure, but asserts that her mere possession of the property is protected by the automatic stay. In so contending, she relies on *In re Griggsby*, 404 B.R. 83 (Bankr. S.D.N.Y. 2009). That decision did hold, in the landlord-tenant context, that the tenant's possessory interest was sufficient to invoke the protection of the automatic stay. However, the court went on to hold an exception to the automatic stay applicable. Section 362(b)(22) of the Bankruptcy Code, added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 311(a), 119 Stat. 23, 84, provides, in pertinent part:

> The filing of a petition under section 301 . . . of this title . . . does not operate as a stay . . . of the continuation of any eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease or rental agreement with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor.

The New York Bankruptcy Court also went on to hold that, even if § 362(b)(22) did not apply, the landlord would be entitled to relief from the automatic stay because the state court warrant of eviction had become final:

> The Debtor cannot collaterally attack the state court judgment in this court. If Griggsby wants relief from the impending eviction, she will have to seek it from the state court. Therefore, cause would exist to lift the automatic stay under § 362(d)(1) if the Court had not otherwise concluded that the stay cannot be reinstated on the record here.

*Id.* at 94 (citing *In re Eclair Bakery Ltd.*, 255 B.R. 121 (Bankr. S.D.N.Y. 2000)).

Section 362(b)(22) does not appear to be applicable in the case, because the debtor does not reside in the property "under a lease or rental agreement." However, as the Chancellor recognized, the debtor has exhausted her state court remedies with respect to the detainer warrant and she may not collaterally attack that warrant. Accordingly, the court will deny the debtor's motion for reconsideration of the court's order granting Wells Fargo relief from the automatic stay.

### III.

Turning to the motion to dismiss, whether dismissal is proper under Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable in bankruptcy adversary proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, turns on compliance with Rule 8(a)(2), which minimally requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Bankr. P. 7008(a); Fed. R. Civ. P 8(a)(2); *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009). In assessing Rule 12(b)(6) motions, courts accept as true

well-pleaded factual allegations; however, labels, conclusions, and formulaic recitations of the elements receive no such deference. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Those allegations that are well-pleaded, when taken together, must "give notice to the defendant as to what claims are alleged" and must contain "'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009)). Nevertheless, detailed factual allegations are not necessary. *Hensley Mfg.*, 579 F.3d at 609 (citing *Twombly*, 550 U.S. at 555). "Plausibility" exists so long as the "'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

Tennessee law does recognize the doctrine of promissory estoppel. *Sparton Tech., Inc. v. Util-Link, LLC*, 248 F. App'x 684, 689 (6th Cir. 2007) (citing *Bill Brown Constr. Co. v. Glens Falls Ins. Co.*, 818 S.W.2d 1 (Tenn. 1991)). Promissory estoppel in Tennessee is described as follows:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*Amacher v. Brown-Forman Corp.*, 826 S.W.2d 480, 482 (Tenn. Ct. App.1991) (citation omitted). As a panel of the Sixth Circuit has explained:

> "The limits of promissory estoppel are: (1) the detriment suffered in reliance must be substantial in an economic sense; (2) the substantial loss to the promisee in

> acting in reliance must have been foreseeable by the promisor; and (3) the promisee must have acted reasonably in justifiable reliance on the promise as made."
>
> Although Tennessee does recognize a claim of promissory estoppel, it does not liberally apply the doctrine and limits its application to "exceptional cases." Such exceptional cases are found only where defendant's conduct is akin to fraud. A promissory estoppel claim is not dependent on the finding of an express contract between the parties, but the court must first determine whether an enforceable contract exists. Promissory estoppel is an alternative theory to recovery on an express contract. While cases do exist where the doctrine has been applied where the parties have contracts, these cases have been limited to cases where a claim of promissory estoppel was advanced to expand the terms of, not change the terms of, an existing contract. Where the parties have an enforceable contract, however, and merely dispute its terms, scope or effect, one party cannot obtain recovery based upon promissory estoppel. Once an express contract is found, therefore, the alternative claim of promissory estoppel becomes moot.

*Sparton Tech., Inc.*, 248 F. App'x at 689-90 (citations omitted).

Even assuming that the promissory note, deed of trust, and any other loan or security documents do not control the rights and responsibilities between the debtor and the defendants, the allegation as to detrimental reliance is not sufficient to allow the court to draw the reasonable inference that the doctrine of promissory estoppel applies. Paragraph 18 of the complaint alleges that the debtor relied on the promise set forth in the February 2010 letter by (1) "accumulating the funds to pay on the modified loan," and (2) "not making any other arrangements to protect her interest in her home." Accumulating funds to make the loan payments is not detrimental to the debtor because those funds remain in the possession of the debtor and belong to her. Any detriment certainly cannot be said to be "substantial in an economic sense." Moreover, the debtor not making other unstated "arrangements to protect her interest in her home" is not a substantial detriment in an economic sense because, as the debtor acknowledges, she does not have any legal interest in the McDonald Road property but merely occupies the property subject being evicted pursuant to the detainer warrant. As previously noted, the debtor challenged the enforce-

ment of the detainer warrant through litigation in state court and lost.  The debtor is in precisely the same position now as before the letter was sent.

The complaint does not contain "'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Accordingly, the court will dismiss Count One.

## IV.

As for Count Two, it does not seek to reinstate the mortgage or enjoin the eviction, but only seeks damages for "Negligent Implementation of HAMP."  This claim was not disclosed in the debtor's schedules and the confirmed chapter 13 plan does not provide for the distribution of any litigation proceeds to creditors. Hence, there appears to be a question as to whether the court has subject matter jurisdiction of Count Two. *See* Fed. R. Bankr. P. 7012(b); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Section 1334(b) of Title 28, United States Code, confers on the federal district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Obviously, the dispute does not arise under or in a case under title 11. The Sixth Circuit has made clear that the bankruptcy court has so called "related to" subject matter jurisdiction of a claim under 28 U.S.C. § 1334(b) only if "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." An action is related to the bankruptcy case "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Robinson v. Mich. Consol. Gas Co.*, 918 F.2d 579, 583 (6th Cir. 1990) (quoting *Pacor, Inc. v. Higgins (In re Pacor, Inc.)*,

743 F.2d 984, 994 (3d Cir. 1984)). Because it is unclear how a resolution of the debtor's claim for damages for negligent implementation of the HAMP program can have an impact on the administration of the debtor's bankruptcy estate, since the plan does not provide for the payment of the defendants' claims or the distribution of the litigation proceeds to creditors, the court will defer consideration of whether Count Two should be dismissed on jurisdictional grounds pending the receipt of supplemental briefs.

## V.

For the foregoing reasons, the court will enter an order denying the Motion to Re-Consider or, in the alternative, for Permission to Appeal filed by the debtor in her chapter 13 case on December 16, 2011, and a separate order granting the Motion to Dismiss and Memorandum in Support filed by Wells Fargo in the adversary proceeding on December 29, 2011, insofar as it relates to Count One of the complaint. The latter order will also require the parties to file briefs addressing the issue of whether the court has subject matter jurisdiction of Count Two of the complaint and, if the court does have jurisdiction, whether it should nevertheless abstain from hearing Count Two "in the interest of justice, or in the interest of comity with State courts or respect for State law." *See* 28 U.S.C. § 1334(c)(1).

###