**SIGNED this 21st day of February, 2012**

                                                  John C. Cook
                                   UNITED STATES BANKRUPTCY JUDGE

_____

## IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Betty Clydene Ashlock** | ) | No. 11-15352 |
| | ) | Chapter 13 |
| **Debtor** | ) | |
| | ) | |
| **Betty Clydene Ashlock** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | Adv. No. 11-1162 |
| | ) | |
| **Wells Fargo Home Mortgage, Inc.** | ) | |
| **Federal Home Loan Mortgage Corp.** | ) | |
| | ) | |
| **Defendants** | ) | |

## M E M O R A N D U M

This adversary proceeding is before the court on the Motion to Dismiss and Memorandum in Support filed by Wells Fargo Bank, N.A., f/k/a Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), and Federal Home Loan Mortgage Corp. ("FHLMC"). By an order entered on

January 20, 2012, the court granted the motion in part, dismissing Count One of the complaint initiating this proceeding. That order also directed the plaintiff to file and serve, within 14 days after the entry of the order, a "supplemental brief addressing the issue of whether the court has subject matter jurisdiction of Count Two of the complaint and, if the court does have jurisdiction, whether it should nevertheless abstain from hearing Count Two," and directed the defendants to file a responsive supplemental brief within seven days after the filing and service of the plaintiff's supplemental brief. The plaintiff has not filed a supplemental brief. The defendants did file a supplemental brief seven days after the plaintiff's supplemental brief was due, arguing that the court does have jurisdiction of Count Two and that the court should not abstain from hearing that claim. The court has reviewed the plaintiff's supplemental brief and agrees that it does have subject matter jurisdiction of Count Two and that it should not abstain from hearing that claim.[1] Moreover, the court concludes that the defendant's motion to dismiss Count Two of the complaint should be granted under the doctrine of *res judicata*.[2]

---

[1] Although the confirmed chapter 13 plan does not provide for the distribution of any litigation proceeds to creditors, the court nevertheless has subject matter jurisdiction of Count Two, which seeks damages for "Negligent Implementation of HAMP," because the cause of action constitutes property of the estate. 11 U.S.C. § 541(a)(1). Consequently, "the outcome of the proceeding could conceivably have an[] effect on the estate being administered in bankruptcy." *Robinson v. Mich. Consol. Gas Co.*, 918 F.2d 579, 583 (6th Cir. 1990) (quoting *Pacor, Inc. v. Higgins (In re Pacor, Inc.)*, 743 F.2d 984, 994 (3d Cir. 1984)). Accordingly, Count Two arises in or is related to the plaintiff's chapter 13 case and the court has jurisdiction of the claim under 28 U.S.C. § 1334(b). Moreover, the court does not believe that abstention under 28 U.S.C. § 1334(c)(1) is appropriate because the plaintiff chose this forum and Count Two is subject to immediate dismissal under the doctrine of *res judicata*.

[2] The motion to dismiss refers to documents outside of the pleadings, namely pleadings and orders filed in the state court record, to which the plaintiff has not objected and which the court has not excluded. Consequently, the motion to dismiss will be treated as a motion for summary judgment. Fed. R. Bankr. P. 7012(b); Fed. R. Civ. P. 12(d).

**I.**

As previously set forth in the court's opinion of January 20, 2012, the record reveals the following undisputed facts. In August 2003, the debtor and her now-deceased spouse executed a promissory note in favor of Wells Fargo, and repayment of the note was secured by a deed of trust to the real property located at 4530 McDonald Road, Apison, Hamilton County, Tennessee. The debtor defaulted on the loan, and Wells Fargo foreclosed on the collateral in February 2009. Wells Fargo was the successful bidder, and thereafter assigned its rights to the property to FHLMC. On May 11, 2009, FHLMC was awarded possession of the property by a detainer warrant issued by the General Sessions Court of Hamilton County, Tennessee. The debtor alleges in her complaint that "[d]uring all times, Plaintiff qualified for a mortgage modification and was actively pursuing such a modification."[3] Compl. ¶ 10. On June 11, 2009, the debtor filed a *pro se* "Writ of Certiorari," seeking to stay the enforcement of the detainer warrant for 120 days to allow the debtor to pursue her application for a loan modification. The General Sessions Court apparently treated the filing as an appeal, granted the stay, and ordered the case transferred to the Circuit Court of Hamilton County, Tennessee. The Circuit Court granted summary judgment to FHLMC on January 4, 2010, based on the untimeliness of the appeal. The debtor filed a motion to reconsider that order, but did not appear at the hearing on her motion and the motion was stricken. The debtor did not appeal.

---

[3] The debtor alleges that she qualified for a mortgage modification under the federal Home Affordable Modification Program ("HAMP"). It is unclear when the debtor actually submitted a request for a modification of the mortgage loan, as she takes the position that the defendants mishandled the request both before and after foreclosure. In her *pro se* "Writ of Certioriari" filed in state court, the plaintiff alleged that "[o]n June 9, 2009 we were told a loan modification would be desired. We provided documentation."

Rather, on or about February 3, 2010, the debtor filed a *pro se* Complaint and an Amendment to the Complaint against the defendants in the Chancery Court of Hamilton County, Tennessee. The complaint asserted that, in foreclosing on the property and obtaining and enforcing the detainer warrant, the defendants had not complied with Tennessee foreclosure laws, had violated Tennessee consumer protection laws, and was guilty of negligence, fraud, and breach of contract. The complaint alleged that the foreclosure and the eviction action were wrongful because the defendants had agreed not to go forward with the process due to ongoing workout negotiations. The complaint alleged a number of facts describing the wrongful conduct on the part of the defendants in handling the plaintiff's loan modification request, to wit:

> Plaintiff, would further show that the Defendant has acted negligently and in bad faith, in that, while in negotiations to settle the matter, and without proper notice to Plaintiff, the Defendant foreclosed the property.
>
> . . . .
>
> Home Mortgage Loss Mitigation and Foreclosure Problems
>
> Plaintiff's son, who hold [*sic*] her power of attorney, has helped in pursuing steps with the lender in obtaining work out plans and loan modification options. There have been several times when plaintiff has established her qualification to the lenders [*sic*] satisfaction for a work out plan, just to have it fall apart in the [*sic*] due to incompetence, false assurances, misrepresentations and general irresponsible handling of the file which in the end amounted to what is gross negligence resulting [*sic*] excessive damage to the Plaintiff. This has been very frustrating. Each time plaintiff did her part something would go wrong with the Defendants [*sic*] processing steps. This pattern of processing challenges turned out to be true and critically impactful [*sic*] the day that the home was foreclosed on as well. Plaintiff has been told again and again that a work out plan had been approved and she simply needed updated documentation. When the documents were reviewed we were notified we were not approved. However, when investigating why plaintiff was told the documentation had not been reviewed accurately, and therefore a notice to stop foreclosure would be sent to the foreclosure attorney and that another extension would be given to postpone the foreclosure to once

-4-

again get updated documentation on income. When a check was made to make sure it had been postponed with the foreclosure attorney, we were informed it had not been, and would go on as scheduled. Plaintiff verified that:

1. she pre-qualified for a loan modification, and;
2. that additional time was only needed to complete the review of the new updated income verification documents,
3. new documentation and its review would require additional time and therefore a request for postponing the foreclosure date had been approved, and that
4. this request had been sent by e-mail to the party that would assure that the law firm who handled the foreclosure were [*sic*] being notified, and;
5. that though the law firm had confirmed to us that they had not received the postponement of the foreclosure request even on that date of the foreclosure and
7.[*sic*] the problem had been identified as an error on the part of a new employee unaware that she was sending information to the wrong party, yet because of insistent calling for confirmation by plaintiff's son on plaintiff's behalf, the problem had been identified and would be corrected in time to postpone the foreclosure and;
8. therefore had been corrected by a new e-mail notification to the person, who would handle the problem immediately,
9. nevertheless the foreclosure attorney did not get notified and the property was foreclosed.

Pattern of Procedural Mistakes:

Follow up seemed to only get attention during last minute pressure leaving little time to correct problems at great stress to plaintiff. Improper processing and review of documentation occurred repeatedly. This pattern persisted through the inconsistent actions of the Defendant at the same time the lender indicated that they were willing to negotiate a solution, such as a loan modification and that they did not want the house back if plaintiff could do a work out a [*sic*] plan. Even with such representations a Writ of Possession was granted and Judgment was entered. In the past when reasons were explained it was usually because documentation was not reviewed correctly or other information was needed to satisfy the original positive pre-qualification.

Plaintiff believes she has carefully studied the Loan Modification qualifications. She has talked with Federal Home Loan Mortgage Corporation and HUD Councilors [*sic*] who indicate that she qualifies for a modification. The resources in the President's plan to stop foreclosures provide for just the plaintiffs [*sic*] situation and yet the plaintiff is not able to get the co-operation of a time extension to

> postpone a writ of possession in order to assure that she has the opportunity to benefit from its intended purpose [*sic*]
>
> WHEREIN Plaintiff respectfully requests that this court issue process in this matter, and to [*sic*] any and all other relief to which she might be entitled.

On September 8, 2010, the Chancery Court dismissed the case with prejudice because the debtor failed to comply with an order compelling discovery. The debtor then obtained legal counsel and filed a motion to alter or amend, which the Chancellor denied on February 1, 2011. The debtor did not appeal that order.

Instead, on September 27, 2011, she filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. On November 25, 2011, the debtor filed the complaint initiating this adversary proceeding. Count Two of the complaint is entitled "Negligent Implementation of HAMP," and asserts that the defendants improperly applied guidelines promulgated under the Home Affordable Modification Program.[4] Count Two reads as follows:

> 22. The HAMP Guidelines provide specific guidance for the Defendants as to when a homeowner such as Mrs. Ashlock qualifies for a home mortgage modification; including, but not limited to, specific total housing costs to income ratios and current market value housing valuations.
> 23. Under these Guidelines, Mrs. Ashlock qualifies to have her loan modified and Defendants negligently failed to properly apply these Guidelines for her benefit.
> 24. Defendants owe a duty to Mrs. Ashlock to properly evaluate her for eligibility under HAMP *before* proceeding with foreclosing on her home and evicting her therefrom.
> 25. By proceeding with the foreclosure before properly evaluating her under HAMP and, then, attempting to evict her, Defendants breached their duty to Mrs. Ashlock.

---

[4] The HAMP guidelines may be found in Part VII of the Fannie Mae Single Family 2011 Servicing Guide (rev. June 10, 2011), which is available at:

https://www.efanniemae.com/sf/guides/ssg/svcg/svc061011.pdf.

26. The breach was the proximate cause of Mrs. Ashlock's injury: to-wit, the foreclosure of her home and potential eviction therefrom.
27. Mrs. Ashclock [*sic*] has suffered damages as a direct result of this breach, including, but not limited to, emotional distress, harm to her credit rating, legal fees and costs.

On December 29, 2011, the defendants filed their motion to dismiss the adversary proceeding. The defendants contend that Count Two of the complaint should be dismissed under the doctrine of *res judicata* because the Chancery Court dismissed with prejudice the complaint alleging negligent and wrongful handling of her loan modification request.

**II**.

Under the Federal Full Faith and Credit Statute, "judicial proceedings . . . [of any State] shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State." 28 U.S.C. § 1738. Therefore, "a federal court must give to a state-court judgment the same preclusive effect as would given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *see also Dubuc v. Green Oak Twp.*, 312 F.3d 736, 744 (6th Cir. 2002). "The doctrine of res judicata, or claim preclusion, provides that a final judgment on the merits of an action precludes the 'parties or their privies from re-litigating issues that were or could have been raised' in a prior action." *Kane v. Magna Mixer Co.,* 71 F. 3d 555, 560 (6th Cir. 1995) (quoting *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398 (1981)). Courts in the state of Tennessee bar under *res judicata* "all claims that were actually litigated or could have been litigated in the first suit between the same parties." *Am. Nat'l Bank & Trust Co. v. Clark*, 586 S.W.2d 825, 826 (Tenn. 1979). "[M]aterial facts or questions, which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by judg-

ment rendered therein, and . . . such facts or questions become res judicata and may not again be litigated in a subsequent action between the same parties." *Booth v. Kirk*, 381 S.W.2d 312, 315 (Tenn. Ct. App. 1963) (quoting *Cantrell v. Burnett & Henderson Co.,* 216 S.W.2d 307, 309 (Tenn. 1948)), *cert. denied* (Tenn. 1964); *see also Brown v. Shappley*, 290 S.W.3d 197 (Tenn. Ct. App. 2008), *application for permission to appeal denied* (Tenn. 2009). Moreover, a final adjudication can take place in an action without there being an actual determination "on the merits":

> In order that a judgment or decree should be on the merits, it is not necessary that the litigation should be determined "on the merits," in the moral or abstract sense of these words. It is sufficient that the status of the action was such that the parties might have had their suit thus disposed of, if they had properly presented and managed their respective cases.

*Madyun v. Ballard*, 783 S.W.2d 946, 948 (Tenn. Ct. App.) (quoting *Parkes v. Clift*, 77 Tenn. 524 (1882)), *application for permission to appeal denied* (Tenn. 1989).

The plaintiff's Chancery Court complaint, which alleged negligent and wrongful mishandling of the plaintiff's mortgage modification request, was dismissed with prejudice. Under Tennessee law, complaints that are dismissed with prejudice are treated as an adjudication upon the merits. Tenn. R. Civ. P. 41.02(3); *Green v. Johnson*, 59 S.W.3d 102 (Tenn. Ct. App. 2000), *application for permission to appeal denied* (Tenn. 2001); *Madyun v. Ballard*, 783 S.W.2d 946. Consequently, the dismissal with prejudice has the same effect as if the complaint had gone to trial in state court and judgment had been rendered in favor of the defendants. It is clear from a review of the allegations setting forth the "negligent implementation of HAMP" claim in Count Two in this proceeding that the claim encompasses issues that were litigated or should have been

litigated in the Chancery Court lawsuit. Accordingly, any cause of action for negligent processing of the plaintiff's HAMP application is barred by *res judicata*.

The plaintiff responds by arguing that the conduct of which she now complains did not take place until after the Chancery Court lawsuit had been commenced: "However, the significant difference for *res judicata* purposes is that in that case, she was arguing about the mishandling of the loan modification process *before* the foreclosure. In this case, she is arguing that the loan modification process was mishandled *after* the foreclosure process." Resp. to Mot. to Dismiss, at 3 (filed Jan. 18, 2012). First, the plaintiff did allege in the Chancery Court lawsuit – which was initiated after foreclosure – that the defendants' handling of the modification process was improper both before foreclosure and after foreclosure. Moreover, the fact that the defendants' alleged negligence continued after the Chancery Court lawsuit was filed does not mean that *res judicata* is inapplicable: as the Sixth Circuit has held, "[w]hen, as here, it is obvious that the alleged ongoing [improper conduct] is actually the defendant continuing in the same course of conduct, which has previously been found by a court to be proper, a subsequent court must conclude that the plaintiff is simply trying to relitigate the same claim." *Dubuc v. Green Oak Twp.*, 312 F.3d at 736.

### III.

For the foregoing reasons, and treating the defendants' motion to dismiss as a motion for summary judgment, the court will enter an order dismissing Count Two of the complaint as barred under doctrine of *res judicata*.

###